IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : Case No. 3:23-CR-00009 |
| v. | : |
| | : |
| ELLIOTT SIMON ATWELL, | : |
| | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Elliott Atwell is a cunning child sex offender, who used his position as a virtual bodybuilding coach to befriend, manipulate, and ultimately sexually exploit numerous minors over the course of many years. Atwell comes before this Court having plead guilty to one count of sexual exploitation of a minor (production of child pornography) and one count of possession of child pornography, pursuant to a Rule 11(c)(1)(C) plea agreement. As part of that agreement, the parties have agreed that the appropriate sentencing range is 180-264 months' (15-22 years') imprisonment. For the reasons stated herein, the Government requests that the Court sentence the defendant to 264 months (22 years) of imprisonment, followed by lifetime supervised release, and full restitution ordered to the victims of his crimes. Such a sentence is sufficient but not greater than necessary to reflect the gravity of the defendant's conduct—repeatedly preying on children to satisfy his own sexual desires—and to meet the other 18 U.S.C. § 3553(a) sentencing factors.

**BACKGROUND**

**I.    The defendant engaged in an extensive, multi-year exploitation of multiple children.**

The defendant portrayed himself as a virtual bodybuilding coach for high-school aged bodybuilders. He approached minors online, purported to mentor them, and then began to groom them with sexual conversations and gifts (including sex toys, Viagra, and cameras). The defendant

encouraged the minors to take and send him photographs and videos of themselves and other minors engaged in sexually explicit conduct. As part of this abuse, Atwell directed the minors how to film the videos he sought. ECF 51 (Tr. of Bond Hrg.) at p. 13. The defendant also sent sexually explicit imagery to his victims in an effort to entice them to engage in similar sexual conduct and record it for him. Atwell was successful in his criminal acts and ultimately accumulated a collection of child sexual abuse material ("CSAM") depicting not only the victims whom he personally enticed to engage in sex acts but also other minors who did not know they were being recorded and who were of a prepubescent age.

### A. Minor Victim 1

Beginning around December 2013, the defendant contacted fifteen-year-old Minor 1 online, portraying himself as a nutritionist and fitness advisor who could help Minor 1 with Minor 1's bodybuilding aspirations. *See, e.g.*, Indictment ¶ 1; PSR ¶ 14. Over the course of several months, the defendant transitioned their personal conversations to the subject of sex and sexuality, and began sending gifts such as sex toys, underwear, knives, and alcohol to Minor 1. Atwell instructed Minor 1 to use the sex toys and send Atwell a video of Minor 1 using them. PSR ¶ 15. The defendant also sent Minor 1 pornography. *Id.* Under the guise of coaching, the defendant requested that Minor 1 take and send him photographs and videos of Minor 1's genitalia and of Minor 1 nude. *Id.* ¶ 16. The defendant's requests for these types of videos and images continued for years. *Id.*

The defendant also encouraged Minor 1 to film Minor 1 having sexual intercourse with individuals from Minor 1's high school. Atwell offered to complete high school homework assignments for Minor 1 in exchange for Minor 1 filming sexual acts with other minors. ECF 51, p. 11-12. Eventually, after Minor 1 turned 18 years old, Minor 1 complied with Atwell's repeated requests and did so. PSR ¶ 17. Minor 1 told law enforcement Minor 1 was afraid to report this

abuse to law enforcement because Atwell threatened him and stated that if Minor 1 disclosed Atwell's criminal activity, Atwell would reveal publicly that Minor 1 and Minor 1's friends used steroids. Atwell knew that if he was to disclose this information, it could hurt Minor 1's reputation as a bodybuilder and weightlifter.

      B.      **Minor Victims 2A & 2B**

The defendant met Minor 2A around 2014, when Minor 2A was approximately 16 years old. Indictment ¶ 3; PSR ¶ 18. The defendant requested nude images of Minor 2A, which Minor 2A sent to the defendant on numerous occasions. PSR ¶ 18. The defendant also enticed Minor 2A to send him videos of Minors 2A and 2B engaging in sexual intercourse. Atwell also sent Minor 2A sex toys, Viagra, and a camera for Minor 2A to use to produce the child abuse material videos. *Id.* ¶ 19.

      C.      **Minor Victims 3A & 3B**

The defendant met Minor 3A in 2015, when Minor 3A was 16 years old. PSR ¶ 20. The defendant ingratiated himself into Minor 3A's life by giving bodybuilding advice and then began commenting on Minor 3A's physique. *Id.* Using the grooming techniques he had honed with other victims, including by sending sexually explicit photos and videos of other minors, the defendant enticed Minor 3A to take and send him videos of Minor 3A engaging in sex acts with Minor 3B. *Id.* ¶ 21-22.

      D.      **Minor Victim 4**

The defendant's pattern of exploitation continued with Minor 4, whom he began to communicate with in 2018. PSR ¶ 7. The defendant engaged in sexual communications with Minor 4 online and sent Minor 4 gifts including a camera, sex toy, Viagra, emergency contraception, and lubricant, to entice Minor 4 to engage in sexually explicit conduct (including with another minor), record it, and send it to him. *Id.* Minor 4 followed the defendant's

instructions, taking and sending him at least two videos depicting Minor 4 engaged in sexual intercourse and oral sex.  *Id.* ¶ 8.

  E.  **Other Minor Victims**

  When the FBI subsequently searched the defendant's electronic devices and iCloud account, pursuant to search warrants in 2020, law enforcement uncovered additional evidence of child exploitation, including over 300 videos and images depicting minors engaged in sexually explicit conduct.  PSR ¶ 11.  Among the sexually explicit imagery were sadistic acts including a naked prepubescent male with an object inserted into his anus.  *Id.*

  Additionally, while on supervised release, Atwell continued to possess and view what appears to be CSAM.  According to Atwell's federal probation officer, he was viewing such a large volume of pornography, his probation officer could not properly monitor his online activity.  It was later discovered that some of the pornography Atwell viewed appeared to involve minors.  For instance, Atwell watched a video entitled, "horny schoolboys," which depicted young males, who appear to be underage, engaging in sexual activity.  ECF No. 51 at p. 21.  Atwell also visited a website called, "Teen boy world" which appeared to contain CSAM as well.  *Id*.

  Based on this information, a search warrant was executed for Atwell's cell phone at the time of his arrest in May 2023.  The review of Atwell's phone revealed that he was continuing to engage in similar behavior as the criminal conduct at issue in this case.  For instance, while on federal supervised probation, Atwell continued to act as a virtual bodybuilding coach to young individuals, although their ages could not be confirmed.  Similar to his criminal conduct in this case, Atwell would purportedly "coach" these individuals and then his conversations with them would turn sexual in nature.  Even more disturbing, during the conversations with these individuals, Atwell shared some of the CSAM he directed to be produced by minors in this criminal case, including a video depicting victims named in the Indictment.  *Id*. at 21-22.

4

## II.    Procedural History

In May 2023, the defendant was charged with four counts of sexual exploitation of a minor (production of child pornography), one count of enticement of a minor, and one count of possession of and access with intent to view child pornography, including that depicting a prepubescent minor and minor under 12 years old.  ECF No. 1.  In June 2024, the defendant pleaded guilty pursuant to a plea agreement under Rule 11(c)(1)(C) to one of the production counts and the possession count. As part of the agreement, Atwell agreed to pay restitution to the victims of all his federal child sex crimes (i.e., not just the victims of the counts of conviction) and the parties agreed that he should be sentenced within the range of 15-22 years' imprisonment.  ECF No. 52.

As set forth in the PSR (ECF No. 66), the defendant's Sentencing Guidelines are 292-365 months.

## ARGUMENT

Considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the Government submits that a sentence of 22 years' incarceration, followed by lifetime supervised release, is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).[1]

### A.    The Nature and Circumstance of the Offenses

The production of child pornography is a vile crime whose horror cannot be fully captured in words. As "[l]ong-term studies" confirm, "sexual abuse is grossly intrusive in the lives of

---

[1] As this Court is well aware, those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

5

children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *United States v. Irey*, 612 F.3d 1160, 1207 (11th Cir. 2010) (en banc) (collecting authority). "When child pornography is produced in conjunction with the sexual abuse of children, . . . the harm to the child victims is magnified and perpetuated." *Id.* at 1208. "Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *United States v. Ferber*, 458 U.S. 747, 759 (1982)); *accord United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012).

Indeed, "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note); *accord United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001) (recognizing that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). These children, "who must live with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *Sherman*, 268 F.3d at 547-48.

It is thus unsurprising that when one "[m]ention[s] the term [child pornography] to your average American[,] . . . he responds with immediate disgust and a sense of unease." *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), *aff'd*, 669 F.3d 723 (6th Cir. 2012). But as the *Cunningham* court warned, "once it enters the legal system, child pornography undergoes sterilization . . . far beyond properly removing emotion from sentencing decisions." *Id.* "Images are described in the most clinical sense. Victims all too often remain nameless. The only

6

emotions on display are those of defendants, sorry that their actions were discovered by law enforcement." *Id*.

The nature and circumstances of the defendant's sexual exploitation of numerous children, as set forth above, are despicable and warrant the requested sentence. Additionally, it appears that Atwell continued to engage in this type of vile behavior even while he was on supervised release for mailing and dispensing prescription drugs without a prescription to a minor. Thus, a sentence of 22 years is appropriate.

### B. The History and Characteristics of the Defendant

The defendant's history and characteristics are alarming and likewise counsel in favor of the requested sentence. The defendant targeted the most vulnerable members of society—children—using an arsenal of tactics. He engaged in long-term grooming with purported mentorship and gifts, used minors to exploit other minors, and sent drugs to minors to facilitate his sex crimes. *See supra*; PSR ¶ 90 (noting convictions for mailing and dispensing prescription drugs without a prescription to another minor in an effort to entice them to produce child sexual abuse material for him). All these factors weigh strongly in favor of the requested sentence.

### C. The Need for the Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment

"There can be no keener revelation of a society's soul than the way in which it treats its children." *Cunningham*, 680 F. Supp. 2d at 847 (attributing quote to Nelson Mandela). Sadly, "[t]he exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded." *Id.* at 848 (citation omitted). To reflect the seriousness of this crime, those who participate in this evil must be punished severely. *See, e.g.*, *United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child pornography be treated severely").

Indeed, the victims in this case have already been subjected to a lifelong scar worse than any punishment the defendant could now receive. The Government requests that the Court impose a sentence that reflects the full impact of the crime on the victims, and the emotional consequences of this abuse which the victims will carry for the rest of their lives. The Government submits that its requested sentence reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment.

        D.        **The Need to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Treatment**

The sentence in this case must constitute a loud message to potential sexual offenders that severe consequences will result from such appalling acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child pornography context.'" *Irey*, 612 F.3d at 1211 (citation omitted). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (citation omitted); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008) (concluding that in child pornography cases "general deterrence is one of the key purposes of sentencing"). The need for effective deterrence through a severe sentence here is therefore essential.

A lengthy sentence is additionally appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 538 U.S. 84, 103 (2003); *see also Cunningham*, 680 F. Supp. 2d at 855-56, 859-60 (discussing recidivism studies); *Irey*, 612 F.3d at 1215-16 (discussing studies and other data showing that

8

"supervised release . . . often fails to prevent sex offender recidivism" and noting that "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does").

Though no one can guarantee whether the defendant will or will not choose to return to his life of predatory exploitation after release from prison, this particular defendant's history and characteristics suggest that such recidivism concerns are well-founded. As noted above, the defendant's criminal conduct lasted years, evincing a consistent sexual interest in children and utter disregard for the law, with innocent children repeatedly suffering the consequences for his sexual pleasure. Even law enforcement and judicial action did not deter him, as he continued to engage in similar behavior while on probation for his convictions described above. *See* 3:22-MJ-00010, ECF No. 8 (Petition for Warrant or Summons for Offender Under Supervision); *see also* ECF No. 51 (Tr. of Bond Hrg.).

Under 18 U.S.C. § 3583(k), the authorized term of supervised release for the defendant's offenses is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See, e.g.*, H.R. Rep. No. 107-527, at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably decline as offenders age"). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), and § 3583(k) and § 5D1.2(b) jointly "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *Morace*, 594 F.3d at 351 (citations omitted).

Accordingly, the Government requests that the Court impose a term of incarceration at the top end of the plea agreement, followed by a lifetime of supervised release including the conditions

9

of supervision set forth in the PSR. Given the defendant's longstanding, extensive pursuit of children to exploit and his probation violation history, *see supra*, such a sentence is the only effective means to mitigate as much as possible the risk that he will reoffend, and also to provide him with steady access to the treatment and monitoring he will require, upon release into the community.

### E.     Restitution

Pursuant to 18 U.S.C. §§ 2259 and 3663, as well as the plea agreement, the defendant must pay restitution in the "full amount of the victims' losses," including restitution to the victims of the dismissed counts. Plea Agreement pg. 11. However, to date, the United States has not received any requests for restitution from the victims in this case.

### F.     Forfeiture

The Government requests that the Court order forfeiture of the property identified in the plea agreement as part of the judgment. *See* Plea Agreement pg. 7.

### G.     Other Financial Consequences

The Government requests a special assessment of $10,000 under 18 U.S.C. § 2259A. Based on the financial information contained in the PSR, it is not seeking a special assessment under 18 U.S.C. § 3014 or a fine. *See generally* PSR ¶¶ 109-111 (noting the defendant's rather limited financial condition).

## CONCLUSION

The defendant is a calculating sexual predator who victimized numerous children over a period of multiple years. For the reasons stated herein, the United States respectfully requests that the Court impose a sentence of 264 months' imprisonment, a lifetime of supervised release, and forfeiture of the defendant's property as set forth herein.

Respectfully submitted,

ZACHERY T. LEE
Acting United States Attorney

*s/Melanie Smith*
MELANIE SMITH
Assistant United States Attorney
Virginia Bar No. 82663
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902
Phone: (434) 293-3180
Melanie.smith@usdoj.gov

*s/Jessica Urban*
JESSICA URBAN
Trial Attorney
DC Bar No. 1008742
Child Exploitation and Obscenity Section
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the defendant.

*s/Melanie Smith*
MELANIE SMITH